# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

| | |
|---|---|
| In re<br><br>OGGUSA, Inc., *et al.*,[1]<br><br>     Debtors. | Chapter 11<br><br>Case No. 20-50133-GRS<br><br>(Jointly Administered)<br><br>Honorable Gregory R. Schaaf |
| OGGUSA, Inc., *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>Southern Tier Hemp, LLC,<br><br>     Defendant. | Adversary Case No. 20-05034-grs |

## SOUTHERN TIER HEMP, LLC'S
## MOTION TO DETERMINE CLAIMS AS "NON-CORE"

Southern Tier Hemp, LLC ("Southern Tier" or "Defendant"), by and through its undersigned counsel, in advance of a forthcoming motion pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011 to withdraw the reference of this adversary proceeding (the "Adversary Proceeding") from the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court") to the United States District Court for the Eastern District of Kentucky (the "District Court"), respectfully moves the Bankruptcy Court to declare the claims alleged in the Adversary Proceeding as "non-core." In support thereof, Southern Tier states as follows:

---

[1] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc. (0251); OGG, Inc. (N/A); and Hemp Kentucky, LLC (0816).

## INTRODUCTION

This Adversary Proceeding is a state law contract dispute based entirely on prepetition events. It has nothing to do with bankruptcy law and bears no meaningful relation to Debtors' chapter 11 cases. In fact, the Debtors no longer even own the claims or the alleged receivables; they sold all of their rights, title and interest in and to the claims and receivables against Southern Tier to their prepetition lender, GenCanna Acquisition Corp. ("GAC"). All of Plaintiffs' substantive claims (breach of contract, unjust enrichment, indemnification, subrogation and promissory estoppel) are based exclusively on state law – neither created by, nor depend upon, the application and interpretation of the federal bankruptcy laws. The one putative bankruptcy law claim, for turnover of debt, is simply a disguised prepetition state law claim to collect the same exact accounts receivable asserted under the other breach of contract claims. Under well-settled law, these claims are "non-core" matters and their adjudication does not require the Bankruptcy Court's specialized knowledge.

Concurrently with the filing of this Motion, Southern Tier has also moved to dismiss the Adversary Proceeding (the "Motion to Dismiss") for multiple independent reasons: (i) the Debtors sold their claims against Southern Tier; therefore, the Debtors lack standing to assert such claims and are not the real parties in interest; (ii) the Bankruptcy Court lacks subject matter jurisdiction to hear a dispute between to two non-debtors, GAC and Southern Tier; and (iii) Plaintiffs otherwise fail to state claims for relief.

Additionally, Southern Tier intends to file a Motion to Withdraw the Reference of this Adversary Proceeding to the District Court for disposition of all matters pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011. A threshold consideration in a motion to withdraw the reference in the Sixth Circuit is whether or not the claims at issue in the Adversary Proceeding are "core" or

21934792

"non-core" under 28 U.S.C. § 157. *See In re Black Diamond Min. Co., LLC v. Constellation Energy Comm. Group, Inc.*, 2010 WL 5173271, at *2 (E.D. Ky. 2010). Pursuant to 28 U.S.C. § 157(b)(3), the Bankruptcy Court makes this determination in the first instance, subject to review by the District Court. *See* 28 U.S.C. § 157(b)(3); *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) ("The bankruptcy judge rules on whether a particular proceeding is a core proceeding.").

Accordingly, prior to filing a motion to withdraw the reference, Southern Tier requests that this Court determine the claims asserted in the Adversary Proceeding are "non-core" and that they are not otherwise related to the Bankruptcy Case, so that Southern Tier can provide the District Court with this Court's ruling on this issue.

## **BACKGROUND**

On October 14, 2020, the Plaintiffs filed the Complaint against Southern Tier in the Adversary Proceeding in the Debtors' chapter 11 case (the "Bankruptcy Case") to recover monies allegedly owed pursuant to certain promissory notes, guarantees, and a hemp grower agreement to which Southern Tier is not a party. [Compl., ¶¶ 20, 24, 26.]

All of Plaintiffs' claims are predicated on the notion that Southern Tier allegedly owes Plaintiffs approximately $4.3 million (the "Alleged Debt") in connection with four contracts and for the procurement of goods, such as CBD products (collectively, the "Products"). [*See* Compl. ¶¶ 1–4.] The four agreements are: (1) a Promissory Grid Note (the "2018 Note") between OGGUSA and Southern Tier; (2) a Hemp Field Grower Agreement (the "Hemp Field Grower Agreement") between OGG and Lake Breeze Farms, LLC; (3) a Promissory Note ("Note II") between Southern Tier and NG Growers, Inc. d/b/a Nanticoke Gardens ("Nanticoke Gardens"); and (4) an Amended and Restated Promissory Note ("Amended Note") between Southern Tier and

Nanticoke Gardens, which amended and superseded an earlier Promissory Note ("Note I") between the same parties (Note I, Note II, and the Amended Note shall hereinafter be collectively referred to as the "Nanticoke Notes").

Debtors and/or GAC (depending on the claim) assert eleven counts in the Complaint: turnover of receivables (Claim I); breach of contract (Claim II); unjust enrichment (Claim III); indemnification (Claims IV and V); subrogation (Claims VI and VII); breach of contract (Claims VIII – X); and promissory estoppel (Claim XI). [*See* Compl.]

Prior to filing the Complaint, the Debtors sold substantially all of their assets to their lender, GAC, pursuant to an Asset Purchase Agreement ("APA") approved by the Bankruptcy Court, a copy of which is attached as Exhibit F to the Complaint. [Compl., ¶¶ 31–34.] Plaintiffs mischaracterize the nature of their sale to GAC. In particular, they state that the receivables allegedly owed by Southern Tier "are property of the Debtors' bankruptcy estates, the proceeds of which have been sold to GAC," and "[u]nder the terms of the Sale Order and the Asset Purchase Agreement (the "APA") which it approved, GAC acquired the right to proceeds from certain causes of action, including, but not limited to the claims against Southern Tier." [Compl., ¶¶ 46, 34.]

Plaintiffs' allegations, however, are belied by the plain and unambiguous language of their own APA, which is attached to the Complaint, and reflects the sale this Court actually approved. In fact, GAC acquired all of the Debtors' rights, title and interest in and to all of the receivables and claims themselves, not just the proceeds:

> Sellers . . . agree to grant, sell, assign, transfer and deliver to Purchaser, and Purchaser agrees to purchase, accept and acquire from Sellers all of Sellers' rights, title and interest, in and to . . . (e) all accounts receivable (whether billed or unbilled), notes, and other documents which evidence any indebtedness to the Sellers, including (without limitation) as set forth on Schedule 4.15.

21934792

[*See* Compl., Ex. F, at 46 (emphasis added) (APA).]  The referenced Schedule 4.15 of the APA specifically lists "note receivables and other receivables" from Southern Tier (1) in an amount of $3,363,964.26, (2) in an amount of $750,000.00, and (3) in aging receivables in an amount of $228,192.10. [*Id.*, Schedule 4.15.]  The amounts of receivables allegedly attributable to Southern Tier in the APA match the amounts asserted in the Complaint (both approximately $4.3 million). [*See* Compl., ¶ 45.]

Further, under section 2.1(f) of the APA, GAC acquired all of the Debtors' claims against Southern Tier related to the receivables. Specifically, section 2.1(f) provides that GAC acquired "any claims against suppliers . . . or other Third Parties solely to the extent related to the Purchased Assets."  [*See* Compl., Ex. F, at 46 (APA).]  "Third Parties" is defined under the APA as any Person that is not the Debtors or GAC, and therefore includes Southern Tier. [*Id.* at 44.]

The Sale Order approving the APA likewise does not support Plaintiffs' allegation that GAC acquired just the right to proceeds from claims against Southern Tier.  [*See* Compl., Ex. F (APA).]  Instead, the Sale Order, like the APA, clearly provides that GAC acquired all rights, title and interest in and to the Purchased Assets (which includes the Alleged Debt):

> The sale and assignment to the Purchaser of the Purchased Assets to the Purchaser will be, as of the Closing Date, a legal, valid and effective transfer of such assets, and each such transfer and assignment shall, upon the Closing, vest the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets free and clear of all Liens (other than Permitted Liens and Assumed Liabilities).

[*See* Compl., Ex. F at 9 (Sale Order).]  Accordingly, upon the Closing Date (May 29, 2020), the Debtors' claims against Southern Tier, and the underlying receivables, belonged solely to GAC.

Southern Tier has not filed a claim against any of the Debtors in the Bankruptcy Case, and therefore the claims allowance process is not applicable.

21934792

## ARGUMENT

**I.      The Bankruptcy Court Does Not Have Jurisdiction to Hear the Adversary Proceeding.**

Original jurisdiction over bankruptcy cases is vested in the United States District Courts under 28 U.S.C. § 1334, but District Courts may refer "any or all" bankruptcy-related proceedings to the bankruptcy courts in their district. *See* 28 U.S.C. § 157(a); *Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Cent. Fin Enter., Inc.)*, 423 F.3d 567, 573–74 (6th Cir. 2005).  In the Eastern District of Kentucky, Local Rule 83.12 provides for the automatic referral of most bankruptcy matters to this district's bankruptcy court. Pursuant to 28 U.S.C. § 157(c)(1), a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings. *See* 28 U.S.C. § 157(c)(1).

Southern Tier filed its Motion to Dismiss, in part, on Fed. R. Civ. Pro. 12(b)(1) grounds that the Plaintiffs have failed to meet their burden to establish jurisdiction under 28 U.S.C. § 1334 based on the facts alleged in the Complaint. *See Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000) (holding that the plaintiff has the burden of proving subject matter jurisdiction). To meet their burden, Plaintiffs must show that a district court's jurisdiction over bankruptcy cases and proceedings meets the standards under 28 U.S.C. § 1334, which gives the district courts "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b); *In re Greektown Holdings, LLC*, 728 F.3d 567, 577 (6th Cir. 2013).

6

21934792

Plaintiffs' Complaint, on its face, does not establish grounds for "arising under," "arising in," or "related to" jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) ("[I]n reviewing a facial attack, the court must consider only the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.").

### 1.    No "Arising Under" Jurisdiction

*First*, the Plaintiffs have not established "arising under" jurisdiction, and there is no such jurisdiction here. Civil proceedings that "arise under" title 11 are proceedings in which the cause of action is created or determined by a statutory provision in title 11. *See Michigan Emp't Security Comm'n v. Wolverine Radio Co., Inc., (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991). The claims alleged in this Adversary Proceeding are all state law claims based on the prepetition Alleged Debt that exist independently of bankruptcy.

Even Count I,  Plaintiffs' claim for turnover under Bankruptcy Code section 542(b)—is really a state law claim to collect accounts receivables pertaining to the Alleged Debts and the cause of action exists independent of bankruptcy. *Beard v. Braunstein*, 914 F.2d 434, 437–38 (3d Cir. 1990) (finding that a claim based in contract was "non-core" even though the claim was labeled a turnover action); *In re DHP Holdings II Corp.*, 435 B.R. 264, 272 (Bankr. D. Del. 2010) (holding that an action labeled as a turnover proceeding was non-core because it was an action brought to collect a prepetition account receivable that could exist outside the bankruptcy case). Further, a section 542(b) claim may not be asserted here – that claim relates solely to turnover of a "debt that is property of the estate," 11 U.S.C. § 542(b), yet the Alleged Debts are no longer property of the Debtors' because they were sold to GAC under the APA. *See In re Lemco Gypsum, Inc.*, 910 F.2d 784, 789 ("The fact that property was once owned by a bankrupt does not supply

federal jurisdiction of all future disputes concerning the property."); *In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989) ("Central Transit obtained the property from Hall's in a sale permitted by the bankruptcy trustee and affirmed by the bankruptcy court after the rezoning had occurred. Consequently, the property passed from Hall's estate to Central Transit and, moreover, out of the bankruptcy court's jurisdiction.").

### 2.    No "Arising In" Jurisdiction

*Second*, the claims at issue in the Adversary Proceeding do not "arise in" the Bankruptcy Case. Claims "arise in" a title 11 proceeding if they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood*, 825 F.2d 90, 96–97 (5th Cir. 1987).  The claims here are all prepetition, state-law contract claims that exist outside of the Bankruptcy Case.

### 3.    No "Related To" Jurisdiction

*Third*, the claims at issue in the Adversary Proceeding are not otherwise "related to" the Bankruptcy Case. The Sixth Circuit has adopted the *Pacor* test for "related to" jurisdiction.  *See In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996). As stated in *Pacor, Inc. v. Higgins*, the "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d 984, 994 (3d Cir. 1984). An action is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

Subject matter jurisdiction is determined as of the time of the filing of the Complaint.  *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004) ("It has long been the case

21934792

that the jurisdiction of the court depends upon the state of things at the time of the action brought. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. . . . We have adhered to the time-of-filing rule regardless of the costs it imposes." (citations and internal quotation marks omitted)); *Bavelis v. Doukas*, Case No. 19-3051, 2020 WL 6129753, at *6 (6th Cir. Oct. 19, 2020) (holding "[t]he ordinary rule of course is that jurisdiction is determined at the time of filing" and declining to consider impact of debtor's plan on the court's jurisdiction because the "complaint in the adversary proceeding was filed before the plan was confirmed").

Plaintiffs' sole assertion in the Complaint in support of this Court's jurisdiction over the Proceeding is their mischaracterization of the sale – that the receivables allegedly owed by Southern Tier "are property of the Debtors' bankruptcy estates, the proceeds of which have been sold to GAC" and "[u]nder the terms of the Sale Order and the Asset Purchase Agreement (the "APA") which it approved, GAC acquired the right to proceeds from certain causes of action, including, but not limited to the claims against Southern Tier." [Compl., ¶¶ 46, 34.] As mentioned above, however, this statement is belied by the plain and unambiguous language of the APA and Sale Order. *See Williams v. CitiMortgage, Inc.*, 498 Fed. App'x 532, 536 (6th Cir. 2012) ("When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."). In fact, GAC acquired all of the Debtors' rights, title and interest in and to the Alleged Debt and related claims. [*See* Compl., Ex. F, at 46 (APA).]

Upon the sale, the Alleged Debts were no longer property of the estate and belonged solely to GAC, and this Court's jurisdiction over such claims and receivables lapsed. "The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property." *In re Lemco Gypsum, Inc.*, 910 F.2d at 789. A bankruptcy court's

9

jurisdiction "does not follow the property, but rather, it lapses when the property leaves the debtor's estate." *In re Hall's Motor Transit Co.*, 889 F.2d at 522; *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992) (holding that third-party adversary complaint could not invoke jurisdiction of the bankruptcy court where property at issue was not property of estate); *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1084 (5th Cir. 1994) (holding that issue of third-party creditor's rights was not "related to" bankruptcy after third-party lease had been rejected and was not part of bankruptcy estate). Other than the Plaintiffs' mischaracterization of the APA, they do not allege any facts to support their conclusory statement that the Bankruptcy Court has "related to" jurisdiction.

Southern Tier is aware that the Court recently addressed a similar issue in a different adversary proceeding brought by Debtor OGGUSA, Inc. against W.I.S.E. Underwriting Agency Ltd. (Adv. Proc. No, 20-05031) (the "W.I.S.E. Proceeding"). The Court entered an Order on December 1, 2020 (Adv. Proc. No, 20-05031, Docket No. 70) determining that adversary proceeding—based on a state law contract dispute related to an insurance policy with ancillary state law consumer protection, bad faith and statutory insurance claims—is related to the Bankruptcy Case, but statutorily and constitutionally "non-core." In the W.I.S.E. Proceeding, the Bankruptcy Court considered the settlement agreement between the Debtors and their lender MGG, which was approved by the Court on November 10, 2020 (Docket No. 1499-15) (the "Settlement Agreement") and the Debtors' confirmed Chapter 11 Liquidating Plan ("Plan") in making its ruling that the Bankruptcy Court has "related to" jurisdiction. The determinative factor for the Bankruptcy Court is that the Debtors' estate will share in the recovery of the proceeds of the W.I.S.E. Proceeding, which will be distributed to creditors pursuant to the terms of Debtors' plan.

21934792

Plaintiffs' filed the Adversary Proceeding prior to the Debtors' filing of the Settlement Agreement with the Court, or the Bankruptcy Court's approval of the Settlement Agreement and Plan, and therefore they should not be considered in the Court's jurisdiction determination. *See Bavelis*, 2020 WL 6129753, at *6. For example, the *Bavelis* court rejected the defendant's argument that confirmation of the debtor's plan altered the bankruptcy court's jurisdictional test to a more restrictive standard, noting that, "more importantly, this test would not apply to these claims. The complaint in the adversary proceeding was filed before the plan was confirmed . . . ." *Id.* Moreover, Plaintiffs made no allegations regarding the Settlement Agreement or Plan in their Complaint, nor did Plaintiffs attach them as exhibits there. To the extent that Plaintiffs' now assert that the Settlement Agreement is relevant to the jurisdictional inquiry before the Bankruptcy Court, Southern Tier reserves the rights to more fully address Plaintiffs' assertions in a reply. However, even if the Bankruptcy Court decides it is appropriate to look at the Settlement Agreement as was done in the W.I.S.E. Proceeding, the Adversary Proceeding and the W.I.S.E. Proceeding are materially different in two respects, which result in a different outcome.

*First*, there are clear factual distinctions between the assets underlying the claims in each action. Unlike the Alleged Debt asserted against Southern Tier, the W.I.S.E. Proceeding concerns insurance policies that were explicitly determined to be "Excluded Assets" under the APA. [*See* Compl., Ex. F, at 46 (APA)]. Accordingly, unlike the Alleged Debts, the insurance policies remained property of the Debtors' estate after entry of the Sale Order and the sale did not divest the Debtors of "related to" jurisdiction with respect to claims and causes of action on the insurance policies. *See In re Edwards*, 962 F.2d at 643.

*Second,* the sharing arrangement with the Debtors' estate under the Settlement Agreement of litigation proceeds from the W.I.S.E. Proceeding litigation is unconditional. With respect to this

11

21934792

Adversary Proceeding, on the other hand, the sharing arrangement is expressly conditioned on joint prosecution of GAC's claims with the Debtors: "Assuming the claims and causes of action of Buyer and the Debtors are jointly prosecuted, any cash proceeds recovered in connection with the Falcone Litigation . . . shall be shared as follows . . . ." [*Compare* Settlement Agreement, § 5.i *with* Settlement Agreement, § 5.h.]  Given GAC owns the Alleged Debt and related claims, and is funding this litigation, the only conceivable basis for this "joint prosecution" condition is GAC's attempt to purchase the jurisdiction of this Court so that its state law contract claims may be heard in this Court, instead of the state courts mandated by the forum clauses set forth in the respective underlying contracts.

In other words, unlike the situation in the W.I.S.E. Proceeding, here the Debtors had no interest in the Alleged Debts or claims against Southern Tier for months after the sale, and only sought to manufacture such an interest after filing the Complaint. This is perhaps best demonstrated in a basic timeline of events underlying the Adversary Proceeding:

| DATE | DESCRIPTION |
| --- | --- |
| May 19, 2020 | The Bankruptcy Court enters the Sale Order approving the APA and the sale of the Alleged Debts and all claims and causes of action related thereto are sold to GAC, divesting the Debtors of Bankruptcy Court jurisdiction. The Alleged Debts are no longer estate assets and any disputes over the Alleged Debts are state law private party disputes between GAC and Southern Tier. |
| Oct. 14, 2020 | Five months after the sale, Plaintiffs file the Adversary Proceeding – without proper subject matter jurisdiction or standing in the Bankruptcy Court. |

21934792

| Nov. 6, 2020 | Debtors file with the Bankruptcy Court an undated copy of the executed Settlement Agreement, which is not effective by its terms until approved by the Bankruptcy Court. *See* Docket No. 1499-15. |
| Nov. 10, 2020 | Bankruptcy Court enters an Order granting the Debtors' motion for approval of the Settlement Agreement. *See* Docket No. 1511. |

Once the APA was approved by the Bankruptcy Court, Debtors were divested of Bankruptcy Court jurisdiction and the Alleged Debt were no longer assets of the bankruptcy estate. A bankruptcy court's jurisdiction "does not follow the property, but rather, it lapses when the property leaves the debtor's estate." *In re Hall's Motor Transit Co.*, 889 F.2d at 522. Five months later, on October 14, 2020, Plaintiffs filed the Complaint, but clearly had no interest in the Alleged Debt at that time. GAC's subsequent attempt to acquire Bankruptcy Court jurisdiction through the Settlement Agreement does not create subject matter jurisdiction because "[p]arties cannot create subject-matter jurisdiction by contract where none exists, nor can they waive a court's lack of subject matter jurisdiction because, quite simply, subject-matter jurisdiction cannot be created where none exists." *See Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 608 (6th Cir. 1998) (overruled on other grounds).

## II.    The Adversary Proceeding Claims are "Non-Core"

Even to the extent the Court has jurisdiction, the District Court may withdraw, in whole or in part, any case or proceeding referred to the Bankruptcy Court by the District Court, on its own motion or on timely motion of any party, for cause shown. 28 U.S.C. § 157(d); *Big Rivers Elec. Corp. v. Green River Coal Co., Inc.*, 182 B.R. 751, 754–55 (W.D. Ky. 1995). The Bankruptcy Code does not define "cause" in section 157(d). Courts consider several non-exclusive factors to determine whether "cause" exists, including: (1) whether the matter is core or non-core; (2) promoting judicial economy; (2) promoting uniformity in bankruptcy administration; (3) reducing

21934792

forum shopping and confusion; (4) fostering economical use of the debtor's and creditor's resources; (5) expediting the bankruptcy process; and (6) the presence of a jury demand. *Sergent v. McKinstry*, 472 B.R. 387, 404 (E.D. Ky. 2012); *Big Rivers Elec. Corp.*, 182 B.R. at 754; *Nat'l Union Fire Ins. Co. v. CMH Liq. Trust (In re Community Mem. Hosp.)*, 532 B.R. 898, 902 (E.D. Mich. 2015).

The determination of whether a proceeding is "core" or "non-core" is a central question in considering whether a motion to withdraw the reference should be granted. *See In re Black Diamond Min. Co., LLC*, 2010 WL 5173271, at *2 (E.D. Ky. 2010); *In re Angelucci*, 2009 WL 798805, at *3 (Bankr. E.D. Ky. 2009). Pursuant to 28 U.S.C. § 157(b)(1), the bankruptcy judge, in the first instance, shall determine whether a proceeding (i) is a core proceeding or (ii) is a proceeding that is otherwise related to a case under title 11. *In re Black Diamond Min. Co., LLC*, 2010 WL 5173271, at *2 ("If the bankruptcy court has not made the core-non-core determination, [a motion to withdraw the reference] is not only untimely, but also premature."). Each cause of action or claim must be analyzed separately. *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). A single cause of action may include both core and non-core claims, and "[t]he mere fact that a non-core claim is filed with a core claim will not mean that the second claim becomes 'core.'" *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) (citations omitted).

A core proceeding "either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 320 (6th Cir. 2006) (quotations omitted); *see also* 28 U.S.C. § 157(b)(2). In *Stern v. Marshall*, the United States Supreme Court held that a core proceeding is one where "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." 131 S. Ct. 2594, 2618 (2011).

14

### 1.    *The Adversary Proceeding is Constitutionally Non-Core*

As stated by the Sixth Circuit in interpreting *Stern*, "[w]hen a claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy, the bankruptcy court cannot enter final judgment. In those cases, the bankruptcy court may only enter proposed findings of fact and conclusions of law." *In re Global Technovations Inc.*, 694 F.3d 705, 722 (6th Cir. 2012) (quotations omitted). As an initial matter, plaintiff has not filed a proof of claim and "has not invoked the peculiar powers of the bankruptcy court." *In re Wood*, 825 F.2d 90, 98 (5th Cir. 1987) (finding that a claim was not "core" in substance where a claim was not filed against the estate). A bankruptcy court may only decide actions that stem from the bankruptcy itself or that are resolved in the claims resolution process. *Stern*, 131 S. Ct. at 2618. Neither is present here. Accordingly, the Bankruptcy Court is constitutionally prohibited from entering final judgment, whether or not the matters are designated as core in 28 U.S.C. § 157(b).

### 2.    *The Adversary Proceeding is Statutorily Non-Core*

Section 157(b)(2) provides a non-exhaustive list of "core proceedings." 28 U.S.C. § 157(b)(2). In the Complaint, Plaintiffs assert that this action is a core proceeding pursuant to the following subsections of 28 U.S.C. § 157(b)(2): (A) as a matter allegedly "concerning the administration of the estate"; (E) as a matter allegedly involving "orders to turn over property of the estate;" and (O) allegedly as "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." [*See* Compl., ¶ 6.] Plaintiffs do not plead with specificity which claims are core under the respective subsections of section 157(b)(2).

21934792

Core proceedings are matters involving a cause of action created by, or determined by, a statutory provision of the Bankruptcy Code. *Michigan Emp't Security Comm'n v. Wolverine Radio Co., Inc., (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991). Plaintiffs have asserted ten purely state law causes of action for breach of contract (Count II), unjust enrichment (Count III), indemnification (Counts IV and V), subrogation (Counts VI and VII), beach of express or implied contract (Counts VIII–X) and promissory estoppel (Count XI). All of Plaintiffs' claims relate to the Alleged Debt, which is prepetition notes and accounts receivable, and are all claims based on state law. These state law contract claims exist independent of the bankruptcy case and are not core proceedings.

Indeed, it is well-established that actions to collect prepetition accounts receivable are straightforward contract actions and non-core proceedings. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84 (1982) (finding Congress could not constitutionally empower a non-Article III bankruptcy court with the authority to adjudicate a state breach-of-contract action, based on a prepetition contract, brought by a debtor against a defendant that had not filed a claim with the bankruptcy court); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1102 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1021 (1994) (finding that a breach-of-contract claim filed against party to prepetition contract, who has filed no claim with bankruptcy court, is "non-core" proceeding); *Craig v. Airbrake Controls, Inc. (In re Crabtree)*, 55 B.R. 130, 133 (Bankr. E.D. Tenn. 1985) (holding that an action to enforce a promissory note is not a core proceeding); *Atlas Automation, Inc. v. Jensen, Inc.*, 42 B.R. 246, 247 (Bankr. E.D. Mich. 1984) (finding it doubtful in light of *Marathon* that Congress intended action to collect account receivable to be tried in bankruptcy court); *Cristol v. Western Book Distributors*

21934792

*(In re Schear & Assoc. Inc.)*, 47 B.R. 544, 545 (Bankr. S.D. Fla. 1985) (holding that an action to collect account receivable is not a core proceeding).

Plaintiffs' only putative bankruptcy law claim—Count I, for turnover under Bankruptcy Code section 542(b)—is simply a disguised state law claim to collect accounts receivable under prepetition contracts.   Indeed, the turnover claim seeks to recover the same exact receivables asserted in Plaintiffs' other contract claims.   Further, the turnover claim fails because the alleged debts to be turned over are no longer property of the Debtors' estates—a critical element under section 542(b). Nonetheless, even if a contract claim is labeled as a turnover proceeding, such as here, it is still non-core. *Beard v. Braunstein*, 914 F.2d 434, 437–38 (3d Cir. 1990) (conducting analysis of whether claim for past-due rent could exist outside bankruptcy even though it was labeled a turnover action, finding that the claim was non-core because it sounds in contract); *In re DHP Holdings II Corp.*, 435 B.R. 264 (Bankr. D. Del. 2010) (holding that an action labeled as a turnover proceeding was non-core because it was an action brought to collect a prepetition account receivable that could exist outside this bankruptcy case, even despite the fact that 25% of the account receivable accrued post-petition).

### 3.    *Southern Tier Does Not Consent to the Bankruptcy Court's Final Judgment*

For the reasons set forth in Section I above, the Plaintiffs' non-core claims are also not related to the Bankruptcy Case, and therefore the Bankruptcy Court does not have jurisdiction over the Adversary Proceeding and it must be dismissed. However, to the extent the Bankruptcy Court determines that there is "related to" jurisdiction, with respect to non-core proceedings, a bankruptcy court may not enter a final judgment, but does have authority to issue proposed findings of fact and conclusions of law that the district court reviews de novo. *See* 28 U.S.C. § 157(c);

*Stern*, 131 S. Ct. 2594 (2011). Here, Southern Tier does not consent to the Bankruptcy Court's final judgment on the claims alleged in the Adversary Proceeding.

## **CONCLUSION**

For the foregoing reasons, Southern Tier requests that the Court enter an Order finding the Adversary Proceeding is non-core and not otherwise related to the Bankruptcy Case.

## **NOTICE**

PLEASE TAKE NOTICE that this matter will come on for telephonic hearing before Judge Gregory R. Schaaf on January 21, 2020 at 9:00 a.m. (ET). Parties wishing to participate in the hearing shall join approximately 10 minutes prior to the start of the hearing using the following dial-in information: Teleconference number – (888) 363-4749; Access Code – 9735709#.

Dated: December 4, 2020

Respectfully submitted,

**STOLL KEENON OGDEN PLLC**

*/s/ Lea Pauley Goff*
Lea Pauley Goff, KY Bar No. 81266
500 West Jefferson Street, Suite 2000
Louisville, Kentucky 40202-2828
Phone:  (502) 333-6000
lea.goff@skofirm.com

Amelia Martin Adams, KY Bar. No. 93038
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1801
Phone:  (859) 231-3000
amelia.adams@skofirm.com

*and*

21934792

**BROWNSTEIN HYATT FARBER
SCHRECK, LLP**

Joshua M. Hantman, CO Bar No. 42010
(pro hac vice motion in process)
Justin L. Cohen, CO Bar No. 44811
(pro hac vice motion in process)
Amalia Sax-Bolder, CO Bar No. 54959
(pro hac vice motion in process)
410 17th Street, Suite 2200
Denver, CO 80202
Phone:  (303) 223-1100
jhantman@bhfs.com
jcohen@bhfs.com
asax-bolder@bhfs.com

*Counsel for Southern Tier Hemp, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed and served electronically through the Court's ECF System on all ECF participants registered in this case at the email addresses registered with the Court on December 4, 2020. Additionally, a true and accurate copy of the foregoing was served on December 4, 2020 by electronic mail on the following members of Plaintiffs' counsel:

DENTONS BINGHAM GREENEBAUM LLP
  James R. Irving (james.irving@dentons.com)
  April A. Wimberg (april.wimberg@dentons.com)
  Christopher B. Madden (chris.madden@dentons.com)
  V. Brandon McGrath (brandon.mcgrath@dentons.com)

SCHULTE ROTH & ZABEL LLP
  Adam C. Harris (adam.harris@srz.com)

/s/ *Lea Pauley Goff*
*Counsel for Southern Tier Hemp, LLC*

125177.168486/8398151.1

21934792