**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| In re<br><br>OGGUSA, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-50133-GRS<br><br>(Jointly Administered)<br><br>Honorable Gregory R. Schaaf |
| OGGUSA, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Southern Tier Hemp, LLC,<br><br>Defendant. | Adversary Case No. 20-05034-grs |

**MOTION TO STAY PROCEEDING**

Southern Tier Hemp, LLC ("Southern Tier"), by and through its undersigned counsel, respectfully moves the Bankruptcy Court (the "Motion"), pursuant to Fed. R. Bankr. P. 5011, to stay this adversary proceeding (the "Adversary Proceeding") pending this Court's ruling on Southern Tier's Motion to Determine Claims as Non-Core [ECF No. 10] (the "Non-Core Determination Motion")] and Southern Tier's forthcoming motion pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011 to withdraw the reference of this Adversary Proceeding from the Bankruptcy Court to the United States District Court for the Eastern District of Kentucky (the "District Court"). In support thereof, Southern Tier respectfully states as follows:

---

[1] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc. (0251); OGG, Inc. (N/A); and Hemp Kentucky, LLC (0816).

21943077

**INTRODUCTION**

Prior to commencing this Adversary Proceeding, the Debtors sold their prepetition contract claims against Southern Tier to GenCanna Acquisition Corp. ("GAC"). As a result, this proceeding is merely a contract dispute between two non-debtors, GAC and Southern Tier. Instead of bringing its claims in the state courts mandated by the forum clauses in the underlying agreements, GAC improperly attempts to avail itself of the jurisdiction of this Court by asserting its claims jointly with the Debtors. The only justification Plaintiffs provide for the Debtors' standing or this Court's jurisdiction is their mischaracterization of the Debtors' sale to GAC. [*See* Complaint, ECF No. 1 ("Complaint"), ¶ 46 ("These receivables are property of the Debtors' bankruptcy estates, the proceeds of which have been sold to GAC.")]. Yet, the Asset Purchase Agreement belies this statement; the receivables themselves were sold to GAC. This Court lacks jurisdiction to hear GAC's claims.

Moreover, the settlement agreement between the Debtors and GAC – which provides a kickback to the Debtors for joint prosecution of these claims – is not relevant to the jurisdictional determination because it occurred after the Complaint was filed. Nor does it cure the fatal jurisdictional flaw – third parties cannot buy bankruptcy jurisdiction. On this basis, and others, Southern Tier recently filed a motion to dismiss this case [ECF No. 11 (the "Motion to Dismiss")], as well as the Non-Core Determination Motion requesting that the Court determine that it lacks jurisdiction and that the Plaintiffs' claims are non-core. In addition, Southern Tier intends to file a motion to withdraw the reference of this proceeding to the District Court for disposition of all matters pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011.

The Motion to Dismiss and this Adversary Proceeding should ultimately be resolved by the District Court because the Adversary Proceeding is a non-core matter, the Bankruptcy Court

2

lacks jurisdiction, and Southern Tier does not consent to the Bankruptcy Court's entry of final judgment. However, under Fed. R. Bankr. P. 5011(c), the filing of a motion to withdraw the reference or a motion for permissive abstention does not stay the administration of the case before the bankruptcy judge. The current Order for Trial [ECF No. 3] contains deadlines that are set to expire prior to this Court's ruling on the Non-Core Determination Motion and the District Court's ruling on Southern Tier's forthcoming motion to withdraw the reference, such as discovery completion by January 19, 2021. Accordingly, Southern Tier hereby requests that the Bankruptcy Court stay this Adversary Proceeding pending both this Court's ruling on the Non-Core Determination Motion and the District Court's ruling on Southern Tier's forthcoming motion to withdraw the reference.

## ARGUMENT

Under the Federal Rule of Bankruptcy Procedure Rule 5011(c), the filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge, except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. Fed. R. Bankr. P. 5011(c). Rule 5011(c) further requires that the motion to stay be first presented to the Bankruptcy Court. *Id.*

Factors to be considered when analyzing a motion to stay pending decision on a motion to abstain or for withdrawal of the reference under Rule 5011(c) include: (1) the likelihood Southern Tier will prevail on the merits; (2) whether Southern Tier will suffer irreparable injury if the stay is denied; (3) whether Plaintiffs will be substantially harmed by the stay; and (4) whether the public interest will be served by granting the stay. *See, e.g.,* 9 COLLIER ON BANKRUPTCY ¶ 5011.03[2][b] (16th 2020) (citing, *inter alia*, *In re City of Detroit*, 498 B.R. 776, 780 (Bankr E.D. Mich. 2013)

3

21943077

(discussing the standards for reviewing a motion under Fed. R. Bankr. P. 5011(c)); *see also Glassman, Edwards, Wyatt, Tuttle & Cox v. Wade (In re Wade)*, 500 B.R. 896, 906 (Bankr. W.D. Tenn. 2013) (considering the same factors when evaluating a motion stay pending appeal as set forth in *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Here, a stay is appropriate upon a balancing of these factors. *Griepentrog*, 945 F.2d at 153 ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.")

1. ***Southern Tier is Likely to Succeed on the Merits of the Non-Core Determination Motion and Subsequent Motion to Withdraw the Reference.***

A threshold consideration in a motion to withdraw the reference in the Sixth Circuit is whether or not the claims at issue in the Adversary Proceeding are "core" or "non-core" under 28 U.S.C. § 157. *See CIT Group / Commer. Servs. v. v. Constellation Energy Comm. Group, Inc. (In re Black Diamond Min. Co., LLC)*, 2010 WL 5173271, at *2 (E.D. Ky. Dec. 14, 2010). Pursuant to 28 U.S.C. § 157(b)(3), the Bankruptcy Court makes this determination in the first instance, subject to review by the District Court. *See* 28 U.S.C. § 157(b)(3); *see also Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) ("The bankruptcy judge rules on whether a particular proceeding is a core proceeding."). Accordingly, prior to filing a motion to withdraw the reference, Southern Tier filed its Non-Core Determination Motion, seeking determination by this Court that the claims asserted in the Adversary Proceeding are non-core and that they are not otherwise related to the Debtors' Bankruptcy Case. As mentioned, Southern Tier also plans to file a motion to withdraw the reference, which will be ripe once this Court rules on the Non-Core Determination Motion. Southern Tier is likely to prevail on both its Non-Core Determination Motion and its forthcoming motion to withdraw the reference.

### a. The Non-Core Determination Motion

Southern Tier is likely to succeed in its Non-Core Determination Motion, which seeks a determination by this Court that Plaintiffs' claims (1) are "non-core," and (2) do not "arise under," "arise in," or otherwise "relate to" the Debtors' Bankruptcy Case or, at best, they solely "relate to" the Bankruptcy Case.

As set forth in the Non-Core Determination Motion, the Adversary Proceeding is entirely non-core. Core proceedings are matters involving a cause of action created by, or determined by, a statutory provision of the Bankruptcy Code. *Michigan Emp't Security Comm'n v. Wolverine Radio Co., Inc., (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991). Plaintiffs have asserted ten purely state law causes of action for breach of contract (Count II), unjust enrichment (Count III), indemnification (Counts IV and V), subrogation (Counts VI and VII), beach of express or implied contract (Counts VIII–X), and promissory estoppel (Count XI). All of Plaintiffs' claims relate to the Alleged Debt,[2] which is based on prepetition notes and accounts receivable, and all of Plaintiffs' claims are claims based on state law. These state law contract claims exist independent of the Bankruptcy Case and are not core proceedings. Plaintiffs' only putative bankruptcy law claim—Count I, for turnover under Bankruptcy Code section 542(b)—is simply a disguised state law claim to collect accounts receivable under prepetition contracts. Even if a contract claim is labeled as a turnover proceeding, such as here, it is still non-core. *Beard v. Braunstein*, 914 F.2d 434, 437-38 (3d Cir. 1990) (conducting analysis of whether claim for past-due rent could exist outside bankruptcy even though it was labeled a turnover action, finding that the claim was non-core because it sounds in contract).

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

Plaintiffs have also failed to meet their burden to allege facts in the Complaint that establish jurisdiction under 28 U.S.C. § 1334. *See Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000) (holding that the plaintiff has the burden of proving subject matter jurisdiction). As set forth in the Non-Core Determination Motion, the claims clearly do not "arise under" or "arise in" the Bankruptcy Case because they are all state law claims based on prepetition debt that exist independently of bankruptcy – including the dressed up Bankruptcy Code section 542(b) turnover claim. Nor have Plaintiffs established that the claims otherwise relate to the Bankruptcy Case.

Although "related to" jurisdiction is broad, it "cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). As adopted by the Sixth Circuit, the "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). However, the Sixth Circuit has modified the *Pacor* test, holding that "an extremely tenuous connection to the estate [will] not satisfy the jurisdictional requirement." *Wolverine Radio Co.*, 930 F.2d at 1142.

Here, the Debtors' sole allegation in support of jurisdiction is their mischaracterization of the sale to GAC. However, as is clear from the Asset Purchase Agreement attached to the Complaint, the receivables and claims were sold to GAC, not just the proceeds thereof. [*See* Compl., Ex. F, at 46.] Once the sale to GAC was consummated, the receivables were no longer property of the bankruptcy estate, and the Bankruptcy Court's jurisdiction lapsed. *See In re Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990) ("The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property."); *In*

6

re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989) ("Central Transit obtained the property from Hall's in a sale permitted by the bankruptcy trustee and affirmed by the bankruptcy court after the rezoning had occurred. Consequently, the property passed from Hall's estate to Central Transit and, moreover, out of the bankruptcy court's jurisdiction."); *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992) (holding that a bankruptcy court's jurisdiction "does not follow the property, but rather, it lapses when the property leaves the debtor's estate."). Other than their mischaracterization of the sale, Plaintiffs allege no other facts showing that this proceeding has any impact on their Bankruptcy Case. The claims in the Adversary Proceeding are not "related to" the Bankruptcy Case, and this Court lacks jurisdiction to hear them.

### i. The Settlement Agreement with MGG is Not Relevant and Otherwise Does Not Create Bankruptcy Jurisdiction.

Plaintiffs may assert that the Alleged Debt is property of the bankruptcy estate by virtue of a settlement agreement between the Debtors and their lender, MGG Investment Group (GAC's parent), which was approved by the Court in the Bankruptcy Case on November 10, 2020 [Bankruptcy Case ECF No. 1499-15) (the "Settlement Agreement")]. Pursuant to the Settlement Agreement – approved six months after the sale and one month after the Complaint was filed – GAC agreed to provide to the Debtors a percentage of the proceeds from this litigation as a kickback in exchange for joint prosecution of these claims. The Debtors and GAC are free to allocate litigation proceeds as they see fit; however, GAC mistakenly believes that it purchased this Court's jurisdiction by doing so.[3] As explained in the Non-Core Determination Motion, this argument, if made, fails for two reasons.

*First*, it is well established that jurisdiction is determined as of the time the Complaint was filed. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004) ("It has long been

---

[3] In fact, the Settlement Agreement does not mention jurisdiction or venue.

the case that the jurisdiction of the court depends upon the state of things at the time of the action brought. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. . . . We have adhered to the time-of-filing rule regardless of the costs it imposes." (citations and internal quotation marks omitted)); *Bavelis v. Doukas*, Case No. 19-3051, 2020 WL 6129753, at *6 (6th Cir. Oct. 19, 2020) (holding "[t]he ordinary rule of course is that jurisdiction is determined at the time of filing"). The Settlement Agreement was approved by the Court and became effective ***after*** Plaintiffs filed the Complaint. Therefore, the Settlement Agreement is not relevant to the Court's jurisdiction analysis. *See Spradlin v. Pikeville Energy Group, LLC*, 2012 WL 6706188, at * 8 (E.D. Ky. Dec. 26, 2012) (finding that an assignment effectuated months after plaintiffs filed a complaint could not create "related to" jurisdiction because the estate had no interest in the estate at the time the complaint was filed); *Assoc. Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*, 149 F.3d 794, 796–97 (8th Cir. 1998) ("[T]he district court cannot retroactively create diversity jurisdiction if it did not exist when the complaint was filed.").

*Second*, even to the extent that this Court considers the Settlement Agreement, the Court should still find that the Settlement Agreement does not (and cannot) create bankruptcy jurisdiction. *See Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 608 (6th Cir. 1998) (overruled on other grounds) ("Parties cannot create subject-matter jurisdiction by contract where none exists, nor can they waive a court's lack of subject matter jurisdiction because, quite simply, subject-matter jurisdiction cannot be created where none exists."). As this Court has recognized, a plaintiff cannot "buy back" federal subject-matter jurisdiction, including bankruptcy jurisdiction, and cannot "contract to create jurisdiction as against a third party." *Spradlin v. Williams, et al. (In*

*re Alma Energy, LLC)*, 2012 WL 243746, at *12 (Bankr. E.D. Ky. Jan. 24, 2012) (quoting *Ilardo v. Al's Diesel, Inc. (In re World Parts, LLC)*, 322 B.R. 37, 42 (Bankr.W.D.N.Y.2005)).

The issues in *World Parts* are on point to this case. There, "the defining issue [was] whether the debtor may, by stipulation, acquire a sufficient interest in the litigation, so as to make the dispute into a matter that is related to a case under title 11 of the United States Code." *World Parts*, 322 B.R. at 39. Like this case, the debtor in *World Parts* sold the assets (inventory) that form the basis of the litigation. *Id*. at 40. A creditor holding a security interest in the debtor's inventory desired to bring litigation against the buyer in the debtor's bankruptcy case. Thus, after the case was converted to Chapter 7, the Chapter 7 trustee entered into a stipulation with the creditor, pursuant to which the creditor allocated to the trustee 12% of any recovery from the creditor's collateral. Like this case, again, the trustee only acquired an entitlement to proceeds from the litigation, which belonged to the creditors. *Id.* at 42. The trustee and creditor then initiated an adversary proceeding alleging, among other things, a turnover claim. The *World Parts* court dismissed the proceeding for lack of subject matter jurisdiction. *Id*. at 43. In particular, the court found that, as a result of the sale, "with respect to the inventory, the estate had no legal or equitable interest over which this court could exercise jurisdiction." *Id.* at 42. The court further rejected the argument that the stipulation created jurisdiction, because "[p]arties may not contract to create jurisdiction as against a third party." *Id*. ("While this court may have jurisdiction over the action against [creditor] to recover the debtor's share in the proceeds of litigation, it does not have jurisdiction to determine the underlying claim of [a creditor] as against [defendants].").

A similar situation arose in this Court in *In re Alma Energy*. There, a debtor sold its assets and causes of actions, and the buyer attempted to bring such claims in the debtor's bankruptcy case. As the Court noted, "Plaintiffs have tried to 'buy back' subject matter jurisdiction" through

9

a stipulation allocating litigation proceeds to the debtor. *Alma Energy*, 2012 WL 243746 at *12. This Court dismissed those plaintiffs' claims because it did not have jurisdiction to hear them. *Id.* at *12-13. Quoting *World Parts*, this Court held: "Parties may not contract to create jurisdiction against a third party." *Id.* at *12 (citations omitted). Just like in *World Parts*, this Court determined: "While this court *may* have jurisdiction over an action against [buyer] to recover the debtor's share in the proceeds of litigation, it does not have jurisdiction to determine the underlying claim of [buyer] as against [defendants]." *Id.* (citations omitted).

In this case, the Alleged Debt itself was sold to GAC, not just proceeds thereof. GAC conditionally granted an interest in the proceeds of this Adversary Proceeding to the Debtors *only if* the Debtors and GAC jointly pursue this proceeding, which is a clear attempt to buy-back the Bankruptcy Court's jurisdiction where there is none. While this Court may have jurisdiction over an action by the Debtors against GAC to collect their share of litigation proceeds, it does not have jurisdiction to determine the underlying claims of GAC against Southern Tier.

### b. *Motion to Withdraw the Reference*

Even if the Bankruptcy Court finds it has jurisdiction, it is, at best, "related to" the Debtors' Bankruptcy Case, and thus the District Court may withdraw the reference for "cause shown." 28 U.S.C. § 157(d); *see also Big Rivers Elec. Corp. v. Green River Coal Co., Inc.*, 182 B.R. 751, 754-55 (W.D. Ky. 1995) (discussing factors to be considered when evaluating "cause") (citations omitted). Southern Tier is likely to prevail on its forthcoming motion to withdraw the reference.

The Bankruptcy Code does not define "cause" in 28 U.S.C. § 157(d). Courts consider several non-exclusive factors to determine whether "cause" exists, including: (1) whether the matter is core or non-core; (2) promoting judicial economy; (2) promoting uniformity in bankruptcy administration; (3) reducing forum shopping and confusion; (4) fostering economical

10

use of the debtor's and creditor's resources; (5) expediting the bankruptcy process; and (6) the presence of a jury demand. *See, e.g., Sergent v. McKinstry*, 472 B.R. 387, 404 (E.D. Ky. 2012); *Big Rivers Elec. Corp.*, 182 B.R. at 754-55; *Nat'l Union Fire Ins. Co. v. CMH Liq. Trust (In re Community Mem. Hosp.)*, 532 B.R. 898, 902 (E.D. Mich. 2015).

The determination of whether a proceeding is "core" or "non-core" is a central question in considering whether a motion to withdraw the reference should be granted. *See Black Diamond*, 2010 WL 5173271, at *2. As set forth above and in the Non-Core Determination Motion, the Adversary Proceeding is entirely "non-core."

Another important factor for the Court's review is whether the Plaintiffs are engaging in forum shopping. The Adversary Proceeding is a clear case of forum shopping – or worse, forum purchasing. As set forth above, GAC purchased all of the Alleged Debt. This two-party dispute between GAC and Southern Tier should have been filed in the state courts mandated by the forum clauses in the underlying agreements. Instead, GAC improperly attempts to circumvent those clauses and state court altogether and avail itself of this Court's jurisdiction though the kickback of proceeds set forth in the Settlement Agreement. GAC, however, cannot purchase federal subject matter jurisdiction, including this Court's jurisdiction. *Alma Energy*, 2012 WL 243746, at *12 (holding a plaintiff cannot "buy back" subject-matter jurisdiction").

A final important factor that weighs heavily in the District Court's determination of whether the motion to withdraw the reference should be granted is the presence of a demand for jury trial. Here, Southern Tier intends to demand a jury trial, which is sufficient cause to withdraw the reference on its own. *See* 28 U.S.C. § 157(c). Unless the parties consent, a bankruptcy judge cannot conduct a jury trial. 28 U.S.C. § 157(e); *accord, Vigh v. Yates*, 1996 U.S. App. LEXIS 14440, at *2  (6th Cir. May 8, 1996) (although bankruptcy judges may "conduct jury trials, such

11

21943077

jurisdiction is granted only if 'specially designated' by the district court and 'with the express consent of all the parties'") (citing 28 U.S.C. § 157(e)); *In re Angelucci*, 2009 WL 798805, at *3 (Bankr. E.D. Ky. Mar. 23, 2009).

In addition to the determinative factors above, the Court may also consider which forum best serves the interests of judicial economy and efficient use of the parties' resources. At this point in the Bankruptcy Case, most of the core bankruptcy matters have been resolved and the Plan has been confirmed, requiring little involvement of the Bankruptcy Court in the Bankruptcy Case going forward. *See Messinger v. Chubb Group of Ins. Co.*, 2007 WL 1466835, *2-3 (N.D. Ohio May 16, 2007). As the Court stated in *Messinger*:

> [T]here would be no particular economy to these parties from going forward in the Bankruptcy Court. The Defendants are not parties to the underlying bankruptcy proceeding, and the issues are sufficiently different from the issues in the bankruptcy proceeding that they would have to be addressed separately in whatever forum the parties to the adversary proceeding found themselves.

*Id.* Given that all of the claims asserted in the Complaint are non-core and Southern Tier does not consent to the Bankruptcy Court's final adjudication, if the Bankruptcy Court proceeds to enter proposed findings of fact and conclusions of law, the District Court will still have *de novo* review over the matters at issue. *See* 28 U.S.C. § 157(c).

The final factor for the Court's consideration is whether or not the motion to withdraw the reference was brought "timely," which is a term that is not defined by statute. Courts generally hold that a party seeking withdrawal must file its motion as soon as possible or practicable. *Irvin v. Faller*, 531 B.R. 704, 708 (W.D. Ky. 2015). Before the District Court will rule on a motion to withdraw the reference, the Bankruptcy Court must first make the determination as to whether claims are "core" or "none-core." *Angelucci*, 2009 WL 798805, at *4 ("To the Court's knowledge, the Bankruptcy Judge has not decided that the claims in dispute are core or non-core, as required

12

by statute . . . In essence, Bennett asks this Court to decide the issue in the first instance, rather than submit the question to the Bankruptcy Judge. The Court declines this invitation. . . ."). Southern Tier filed its Non-Core Determination Motion simultaneously with the filing of the Motion to Dismiss. Southern Tier will file its motion to withdraw the reference in short order, but, to the extent it is filed prior to the Bankruptcy Court's ruling on the Non-Core Determination Motion, Southern Tier will defer in its motion to the Bankruptcy Court's ruling on the gating "non-core" determination. Southern Tier is both acting timely under the circumstances of this case and following the sequence of events required by statute and prior orders of the District Court in other cases.

> 2. *Southern Tier Will Suffer Irreparable Harm if this Motion is Denied, While Plaintiffs Will Not Suffer Harm if the Motion is Granted.*

Although a court weighs the harm to the movants and the non-moving party in determining whether to grant a stay request, this factor is considered on a sliding scale with the first factor, success on the merits. *Mich. First Credit Union v. Smith (In re Smith)*, 501 B.R. 332, 336 (Bankr. E.D. Mich. 2013) ("The probability of success on the merits that must be shown is inversely proportional to the degree of irreparable injury the plaintiffs will suffer absent the stay."). As set forth above, Southern Tier can show more than a "mere possibility" of success on the merits of the Non-Core Determination Motion and the forthcoming motion to withdraw the reference. For this reason, Southern Tier need only show some irreparable injury, or "irreparable harm which decidedly outweighs any potential harm to the defendant if a stay is issued." *Id.*

Plaintiffs will not be harmed by a stay given that the Adversary Proceeding is still in dispositive motions and no discovery has been served. *See Miller v. Vigilant Ins. Co. (In re Eagle Enterprises, Inc.)*, 259 B.R. 83 (Bankr. E.D. Pa. 2001). To the contrary, Plaintiffs also benefit by

13

21943077

settling gating issues on jurisdiction prior to proceeding with litigation on the Motion to Dismiss, as to avoid any duplicative proceedings.

Southern Tier, on the other hand, will suffer harm if the proceeding is not stayed pending determination of the Non-Core Determination Motion and the motion to withdraw the reference. The Order for Trial entered in this Adversary Proceeding [ECF No. 3], sets forth a timeline that requires, among other things, that the parties complete discovery by January 19, 2021 and that the Bankruptcy Court hold a trial on March 9, 2021. The Non-Core Determination Motion will not even be heard by the Court until the scheduled January 21, 2021 hearing. Southern Tier does not only contest the core versus non-core nature of the claims, but also whether this Court has any jurisdiction to hear them. Thus, absent a stay, Southern Tier will be forced to engage in discovery and potentially litigate Plaintiffs' claims, before this Court has determined whether it has jurisdiction to even hear these claims. Additionally, by proceeding in the Bankruptcy Court as opposed to the state courts mandated by the forum clauses in the underlying agreements, Southern Tier is deprived of the benefit of its bargain with respect to those agreements. Accordingly, to the extent this factor is taken into consideration, it weighs in favor of granting the stay in the interest of both parties.

### 3. *The Public Interest Will be Served by Granting the Stay.*

As set forth in the Non-Core Determination Motion, the Adversary Proceeding is a private two-party dispute that is funded in its entirety by the non-debtor Plaintiff, GAC. It is against the public interest to permit a plaintiff to purchase federal subject matter jurisdiction, including bankruptcy jurisdiction. Allowing the Adversary Proceeding to proceed before this Court and the District Court make gating determinations on jurisdiction is a slippery slope that may widen the Bankruptcy Court's reach beyond Congress's intent. As such, to the extent this factor is

considered, it too weighs in favor of a stay. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) ("These factors are to be balanced against one another and should not be considered prerequisites to the grant of [relief].").

## **CONCLUSION**

For the foregoing reasons, Southern Tier requests that the Bankruptcy Court stay this matter pending the Bankruptcy Court's ruling on the Non-Core Determination Motion and the District Court's ruling on the forthcoming motion to withdraw the reference.

## **NOTICE**

PLEASE TAKE NOTICE that this matter will come on for telephonic hearing before Judge Gregory R. Schaaf on January 21, 2021 at 9:00 a.m. (ET). Parties wishing to participate in the hearing shall join approximately 10 minutes prior to the start of the hearing using the following dial-in information: Teleconference number – (888) 363-4749; Access Code – 9735709#.

Dated: December 15, 2020

Respectfully submitted,

**STOLL KEENON OGDEN PLLC**

*/s/* Lea Pauley Goff
Lea Pauley Goff, KY Bar No. 81266
500 West Jefferson Street, Suite 2000
Louisville, Kentucky 40202-2828
Phone: (502) 333-6000
lea.goff@skofirm.com

Amelia Martin Adams, KY Bar. No. 93038
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1801
Phone: (859) 231-3000
amelia.adams@skofirm.com

*and*

21943077

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

Joshua M. Hantman, CO Bar No. 42010
(pro hac vice motion in process)
Justin L. Cohen, CO Bar No. 44811
(pro hac vice motion in process)
Amalia Sax-Bolder, CO Bar No. 54959
(pro hac vice motion in process)
410 17th Street, Suite 2200
Denver, CO 80202
Phone:  (303) 223-1100
jhantman@bhfs.com
jcohen@bhfs.com
asax-bolder@bhfs.com

*Counsel for Southern Tier Hemp, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed and served electronically through the Court's ECF System on all ECF participants registered in this case at the email addresses registered with the Court on December 15, 2020. Additionally, a true and accurate copy of the foregoing was served on December 15, 2020 by electronic mail on the following members of Plaintiffs' counsel:

DENTONS BINGHAM GREENEBAUM LLP
James R. Irving (james.irving@dentons.com)
April A. Wimberg (april.wimberg@dentons.com)
Christopher B. Madden (chris.madden@dentons.com)
V. Brandon McGrath (brandon.mcgrath@dentons.com)

SCHULTE ROTH & ZABEL LLP
Adam C. Harris (adam.harris@srz.com)

/s/ Lea Pauley Goff
*Counsel for Southern Tier Hemp, LLC*

125177.168486/8403639.2